* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to the provisions of the North Carolina Workers' Compensation Act, and the Industrial Commission has jurisdiction over these claims.
2. The third party administrator for defendant-employer CVS Pharmacy (hereinafter "defendant-employer CVS") is GAB Robins.
3. The carrier on the risk for defendant-employer Rose, Harrison 
Gilreath (hereinafter "defendant-employer RHG") is Ohio Casualty Group.
4. There is no question as to misjoinder or nonjoinder of any party.
5. At all relevant times, plaintiff was an employee of defendants.
6. Defendants CVS and GAB Robins admitted the claim for I.C. No. 506675 (date of injury February 4, 2005) pursuant to a Form 60 dated June 17, 2005, and admitted the claim for I.C. No. 627621 (date of injury March 27, 2006) on a medicals only basis pursuant to a Form 60, dated June 9, 2006.
7. Defendants RHG and Ohio Casualty were joined upon motion of defendant-employer CVS and GAB Robins and have denied the claims.
8. Plaintiff's average weekly wage as of March 27, 2006 was $455.54, which yields a compensation rate is of $303.69 per week.
9. The following documents were accepted into evidence as stipulated exhibits at the Deputy Commissioner's hearing:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission forms and filings *Page 3 
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Plaintiff's personnel file from defendant-employer RHG
 • Exhibit 5: Parties' discovery responses
 • Exhibit 6: Defendant-carrier GAB Robins' indemnity and medical payment history
10. The issues before the Commission are whether plaintiff is entitled to further compensation for her back condition; whether plaintiff sustained a new compensable back injury by specific traumatic incident on November 17, 2006 while working with defendant-employer RHG; whether plaintiff's current back condition, need for additional medical treatment and any ongoing disability are related to the admittedly compensable back injuries that plaintiff sustained while working with defendant-employer CVS on February 4, 2005 and March 27, 2006, or the alleged November 17, 2006 incident, or neither; and, whether defendants should pay attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the Deputy Commissioner's hearing, plaintiff was 51 years old and completed one semester of junior college. She worked for the North Carolina Department of Transportation ferry system performing computerized inventory work, as a typesetter for a newspaper, and as a clerk at a tackle shop. Plaintiff began employment with defendant-employer CVS in 2004 and worked for approximately a year and a half, starting as a pharmacy technician and advancing to shift supervisor. After her employment with defendant-employer CVS, *Page 4 
plaintiff worked for approximately two months part-time at the Duke of Dare Motor Lodge as a desk clerk, and then approximately three months as a receptionist with defendant-employer RHG, a law firm.
2. Plaintiff's overall health was good before she started work with defendant-employer CVS in December of 2004, and she had no condition that impaired her ability to work at full-duty. In her positions with defendant-employer CVS, plaintiff's duties included entering prescriptions into the computer, filling prescriptions, serving customers, performing inventory, stocking shelves and unloading trucks.
3. On February 4, 2005, plaintiff sustained a low back injury, including severe pain down her right leg, when she fell while unloading products from a truck in the course of her employment with defendant-employer CVS. Defendants CVS and GAB Robins accepted this injury on a Form 60 dated June 17, 2005.
4. After conservative treatment with her family physician failed to relieve plaintiff's low back and right leg pain, plaintiff underwent a lumbar MRI on March 26, 2005. The MRI revealed an L4-5 right paracentral disc herniation compressing the right L5 nerve root, with evidence of degenerative changes and stenosis throughout the lumbar spine.
5. On May 6, 2005, plaintiff presented to Dr. Victor Sonnino, a neurosurgeon, who diagnosed a disc herniation at L4-5 and recommended a course of physical therapy. He also restricted plaintiff to no lifting greater than ten pounds, with alternating sitting and standing.
6. Physical therapy failed to relieve plaintiff's symptoms, and, on June 22, 2005, plaintiff underwent a decompressive laminotomy by Dr. Sonnino. Following surgery, plaintiff returned for postoperative treatment with Dr. Sonnino, including a course of physical therapy. *Page 5 
The surgery improved plaintiff's symptoms, but she still had low back pain and pain going down her right leg, and her feet were constantly numb.
7. From June 2, 2005 through August 3, 2005, plaintiff was out of work and defendant-carrier GAB Robins paid plaintiff temporary total disability. After her return to work with defendant-employer CVS, plaintiff was promoted to shift supervisor.
8. On March 27, 2006, plaintiff sustained a low back and left knee injury when she fell off a ladder while stocking shelves in the course of her employment with defendant-employer CVS. This injury involved predominately the left side of plaintiff's low back. Defendants CVS and GAB Robins accepted this claim on a medicals only basis on a Form 60 filed June 9, 2006.
9. On May 12, 2006, plaintiff returned to Dr. Sonnino, reporting increased back pain, right leg pain and left knee pain following her March 27, 2006 fall. Dr. Sonnino diagnosed plaintiff with a possible recurrent disc herniation and referred her for a repeat MRI. Plaintiff underwent a lumbar MRI on May 27, 2006, which revealed no recurrent disc herniation.
10. On May 29, 2006, plaintiff's supervisor, Sylvia Blake, fired plaintiff for insubordination. Plaintiff testified that on or about May 26, 2006, she argued with her supervisor regarding her job performance. Later that day, plaintiff again spoke to Ms. Blake on the telephone and got so angry that she used profanity on the phone. On Monday, May 29, 2006, plaintiff was terminated for insubordination. Plaintiff alleged that her firing was partially related to her physical inability to fulfill the duties of her job since her injury.
11. Dr. Sonnino wrote plaintiff out of work on May 30, 2006. From June 9, 2006 until July 21, 2006, plaintiff worked part-time as a desk clerk with the Duke of Dare Motor *Page 6 
Lodge. Plaintiff received unemployment compensation during this time. On July 27, 2006, she began work for defendant-employer RHG.
12. On June 5, 2006, plaintiff treated with Dr. Patrick Kessler, an orthopedist, for her left knee injury. Dr. Kessler diagnosed a left medial knee sprain and gave plaintiff an injection. On June 19, 2006, with plaintiff's left knee symptoms significantly improved, Dr. Kessler diagnosed plaintiff with a resolved contusion/sprain of her left knee and determined that she had reached maximum medical improvement with regard to her left knee condition. Dr. Kessler released plaintiff to full-duty work with respect to her left knee.
13. On July 27, 2006, plaintiff began work for defendant-employer RHG as a full-time receptionist. Her duties included answering the phone, typing letters, assisting the paralegal and breaking down old files for storage.
14. Following Dr. Sonnino's retirement, plaintiff was referred to Dr. Q.A. Thai, a neurosurgeon. On August 11, 2006, plaintiff saw Dr. Thai for additional treatment and reported low back pain with right foot swelling. Dr. Thai stated that plaintiff's latest MRI did not reveal any structural abnormality requiring surgery. He diagnosed left-side sacroiliitis and recommended continued light activity and rest, with follow-up with her family physician for medications. This was plaintiff's only visit to Dr. Thai.
15. On September 7, 2006, plaintiff underwent a functional capacity evaluation (FCE) with Coastal Rehabilitation, Inc. The FCE revealed that plaintiff gave full effort and was capable of light-medium physical demand level, with occasional lifting of 20-25 pounds, and frequent lifting of 10-15 pounds. The evaluator also noted that plaintiff required regular position changes in order "to minimize increased pain and prolong activity tolerances." Plaintiff pushed herself hard during the FCE, and her back symptoms worsened immediately. *Page 7 
16. Plaintiff's co-worker, Ginger Branton, testified that after the FCE, plaintiff was unable to sit, unable to stand at the copier to make copies, and that plaintiff had to elevate her feet while she worked. Ms. Branton testified that she noted these changes in plaintiff immediately after plaintiff's FCE.
17. On September 14, 2006, plaintiff returned to Coastal Rehabilitation reporting a significant increase in her low back symptoms following the FCE. Plaintiff reported disabling pain and the inability to do her everyday activities.
18. Plaintiff also presented to the Outer Banks Hospital on September 14, 2006, reporting low back pain since her FCE one week prior. Plaintiff was diagnosed with acute back pain and the treating physician prescribed Dilaudid, a narcotic that causes drowsiness, and recommended follow-up with a neurosurgeon.
19. On September 22, 2006, plaintiff returned to Outer Banks Hospital complaining of severe back pain, which she rated as 8-9 out of 10. The treating physician diagnosed plaintiff with an acute exacerbation of chronic back pain.
20. On September 27, 2006, plaintiff saw Dr. Edward Gold, an orthopedic surgeon, for an independent medical examination. Dr. Gold examined plaintiff for approximately ten minutes, looked at her latest MRI report (but not the films), diagnosed chronic low back pain with sciatica, opined that plaintiff was not a surgical candidate, and made no recommendations for further treatment. Dr. Gold had no explanation for plaintiff's continuing right leg pain. He released plaintiff to return to work with a restriction of no lifting over 25 pounds, and assigned a 13% permanent partial impairment rating to her back.
21. On October 10, 2006, plaintiff went to her family physician, Dr. Walter Holton, reporting persistent low back pain that she described as "incapacitating." Dr. Holton diagnosed *Page 8 
plaintiff with chronic pain, prescribing an adjustable bed to aid in plaintiff's recovery. Plaintiff returned to Dr. Holton on October 31, 2006, again reporting "incapacitating" low back pain. On November 8, 2006, plaintiff saw Dr. Holton for further follow-up, stating that her debilitating symptoms were aggravated with extended sitting or standing.
22. During the late summer and through the fall of 2006, plaintiff continued working with defendant-employer RHG. On November 17, 2006, plaintiff bent over to file a small folder weighing less than half a pound in a cabinet about one foot off the floor, when she felt pain in her low back. The pain was in the same location as plaintiff's low back that she had since her injury on February 4, 2005. She presented to Outer Banks Hospital that day with back pain "worse today after bending over to move files." Plaintiff was again diagnosed with an acute exacerbation of chronic back pain and the treating physician continued her previous conservative treatment.
23. On November 20, 2006, defendant-employer RHG terminated plaintiff from her job because of her physical inability to handle the duties of the position and her many absences. Plaintiff missed days due to low back pain, particularly after the FCE on September 7, 2006, and when she was at work she was often drowsy from medications. While she was employed with defendant-employer RHG, plaintiff experienced continued low back pain radiating down her right leg and numbness in both feet. Plaintiff admitted that she did not perform her job very well with defendant-employer RHG, despite their efforts to accommodate her limited abilities.
24. On November 20, 2006, plaintiff presented to Dr. Michael Barnum for a second opinion evaluation at the request of defendant-carrier GAB Robins. This evaluation was scheduled before November 17, 2006. On November 20, 2006, Dr. Barnum performed a thorough evaluation and diagnosed plaintiff with degenerative disc disease at L4-5, foraminal *Page 9 
stenosis and radiculitis, and referred plaintiff for physical therapy. Dr. Barnum assigned plaintiff restrictions of no lifting over 10 pounds and no repetitive pushing, pulling, stooping, kneeling, twisting, bending or squatting, and recommended that plaintiff alternate sitting and standing. Defendant-carrier GAB Robins cut off medical treatment after the November 20, 2006 appointment, so plaintiff never had the physical therapy that Dr. Barnum recommended.
25. On April 3, 2007, plaintiff returned to Dr. Barnum's office and was seen by his physician's assistant. Plaintiff reported increased low back symptoms since her treatment stopped. Dr. Barnum administered two epidural steroid injections in April and May of 2007, without payment, but the injections provided plaintiff only limited relief. Dr. Barnum recommended a repeat MRI.
26. At the Deputy Commissioner's hearing, the Deputy Commissioner ordered defendant-carrier GAB Robins to pay for the repeat MRI ordered by Dr. Barnum and to set up a follow-up appointment. On October 25, 2007, plaintiff underwent a lumbar MRI, which showed residual or recurrent disc herniation at L4-5 with epidural fibrosis surrounding the right L5 nerve root. On November 2, 2007, noting the disc extrusion at the L4-5 level, Dr. Barnum recommended that plaintiff proceed with an L5-S1 laminectomy and fusion. As of the time of the Deputy Commissioner's hearing, plaintiff had not undergone the procedure.
27. As of the Deputy Commissioner's hearing, plaintiff was sleeping in a recliner at night and was in constant pain. She had numbness and pain down both legs and was spending six to eight hours a day in her recliner and was taking Darvocet and anti-inflammatories. The Deputy Commissioner found that plaintiff was in obvious discomfort at the hearing and had to get up and walk around to try to obtain relief from her symptoms. *Page 10 
28. Plaintiff testified that based on her symptoms, she cannot return to work as a pharmacy tech, shift supervisor, or typesetter. She felt she may be able to return to work as a receptionist part time with restrictions, but that there was not much she felt she could do. The Full Commission finds that at this time it would be futile for plaintiff to look for work because of her level of pain, the need for additional surgery, and her inability to perform even the light duty work as a receptionist at defendant-employer RHG.
29. Approximately 10% of the practice of Dr. Gold, the IME doctor, is devoted to back conditions; however, he no longer performs back surgery. Dr. Gold performs one to two IMEs per week, approximately 90 percent of which are requested by insurance carriers. When he evaluated plaintiff on September 27, 2006, Dr. Gold had the report from plaintiff's September 7, 2006 FCE, but he did not have any records of plaintiff's hospital visits during the intervening three-week period and he was not aware that plaintiff has suffered a significant increase in her symptoms following the FCE. Dr. Gold testified at his December 3, 2007 deposition that he deferred to plaintiff's treating physician for any causation opinion regarding plaintiff's then-current status. Dr. Gold did not offer any causation opinion of his own.
30. Dr. Barnum is a board-certified orthopedist with a subspecialty in spinal surgery. Dr. Barnum testified that based on plaintiff's history and pathology, he did not think that plaintiff's bending over and picking up files at defendant-employer RHG on November 17, 2006 had anything to do with causing her current symptoms or her need for surgery. Rather, Dr. Barnum testified that plaintiff had an exacerbation of her pre-existing low back condition when she fell at work at defendant-employer CVS on March 27, 2006. Dr. Barnum also testified that during his treatment of plaintiff, he was unaware of the alleged November 17, 2006 incident and *Page 11 
that he thought plaintiff was still employed with defendant-employer RHG. Dr. Barnum felt the restrictions he assigned plaintiff on November 20, 2006 were still accurate.
31. Dr. Barnum further testified and the Commission finds that plaintiff's current condition and her need for additional surgery are causally related to the injuries plaintiff sustained on February 4, 2005 and the subsequent exacerbation on March 27, 2006.
32. Dr. Linda Morway, a physician on call at Outer Banks Hospital, did not treat plaintiff. Dr. Morway testified that it was possible that the November 17, 2006 incident gave rise to plaintiff's current need for surgery, but she deferred to plaintiff's treating physician on causation questions.
33. Mattie Worrix, R.N., the nurse case manager assigned to plaintiff's claim, testified that she would defer to the physicians on causation questions.
34. Drs. Thai and Sonnino were not deposed.
35. The Commission gives greater weight to the testimony of Dr. Barnum than to the testimony or notes of the other physicians. Dr. Barnum saw plaintiff several times, has reviewed her MRI films, and specializes in spinal conditions. Dr. Gold saw plaintiff once, did not review the MRI films and did not offer any treatment recommendation for plaintiff. Dr. Thai saw plaintiff only once and was not deposed, and Dr. Morway did not treat plaintiff.
36. The Commission finds that plaintiff's treatment with Dr. Barnum since November 20, 2006 has been reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability.
37. As the result of the injuries plaintiff sustained on February 4, 2005 and March 27, 2006, plaintiff has been disabled from any employment since November 17, 2006.
38. Defendants have not defended this action without reasonable grounds. *Page 12 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
3. On February 4, 2005 and March 27, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer CVS. N.C. Gen. Stat. § 97-2(6).
4. However, on November 17, 2006, plaintiff did not sustain a compensable specific traumatic incident arising out of and in the course of her employment with defendant-employer RHG. N.C. Gen. Stat. § 97-2(6). No causal relationship existed between the alleged incident on November 17, 2006 and the disability for which compensation is sought.Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980). As such, defendants RHG and Ohio Casualty Group are not liable for this claim. N.C. Gen. Stat. § 97-29.
5. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally *Page 13 
related to the compensable injury by accident. Snead v. Mills,Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc., 126 N.C. App. 540,485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v. PrestigeFabricators, Inc., 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60 is an award of the Commission and that the Parsons presumption applies. Perez v. American Airlines, 174 N.C. App. 128, 620 S.E.2d 288
(2005), disc. review improvidently allowed, 360 N.C. 587, 634 S.E.2d 887
(2006).
6. In this case, defendants CVS and GAB Robins accepted plaintiff's low back injury on February 4, 2005 as compensable. As such, theParsons presumption applies and defendants CVS and GAB Robins failed to rebut the presumption that the medical treatment plaintiff received in November 2006 is directly related to the compensable injury. Parsons v.Pantry, Inc., supra. The greater weight of the medical evidence establishes that plaintiff's back condition in November 2006 was causally related to her injuries by accident on February 4, 2005 and March 27, 2006.
7. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable left knee injury of March 27, 2006, for so long as such examinations, *Page 14 
evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
8. Dr. Barnum is designated as plaintiff's authorized treating physician and defendants CVS and GAB Robins shall pay for Dr. Barnum's treatment recommendations for plaintiff's compensable low back condition, including but not limited to surgery. Plaintiff is also entitled to have defendants CVS and GAB Robins pay any outstanding medical bills she has incurred for treatment for her compensable low back condition. N.C. Gen. Stat. §§ 97-2(19); 97-25.
9. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee *Page 15 
and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. PerdueFarms, Inc., supra.
10. In this case, Dr. Barnum released plaintiff to return to work with some restrictions on November 20, 2006. However, even though plaintiff may be capable of some work, plaintiff has shown that after November 20, 2006, it was futile for her to seek employment because of the level of pain she experienced, the need for additional surgery, and her inability to perform even the light duty work as a receptionist. Demery v. PerdueFarms, Inc., supra.
11. As the result of the compensable injury by accident of February 4, 2005 and the exacerbation on March 27, 2006, plaintiff is disabled from any employment and is entitled to have defendants CVS and GAB Robins pay her total disability compensation at the rate of $303.69 per week beginning November 17, 2006 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
12. Defendants have not defended this action without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, defendants CVS and GAB Robins shall pay plaintiff total disability compensation at the rate of $303.69 per week from November 17, 2006 and continuing until plaintiff returns to work or further Order of the Commission. Any amounts accrued shall be paid in a lump sum. *Page 16 
2. Dr. Barnum is hereby designated as plaintiff's authorized treating physician, and defendant CVS and GAB Robins shall immediately authorize and pay for the treatment that Dr. Barnum recommends for plaintiff's compensable low back condition, including but not limited to surgery, diagnostic testing, physical therapy, prescriptions, and referrals. Specifically, defendants CVS and GAB Robins shall immediately authorize the surgery that Dr. Barnum recommended in his November 2, 2007 office note.
3. Defendants CVS and GAB Robins shall pay any of plaintiff's unpaid medical bills after application of the Commission's fee schedule, including but not limited to bills from Dr. Holton, The Outer Banks Hospital and/or Dr. Barnum, related to her compensable back condition. If plaintiff and/or any third-party payor has paid any such bills, defendants CVS and GAB Robins shall reimburse such payor in full. Defendants CVS and GAB Robins shall also pay plaintiff's mileage incurred during trips to Dr. Barnum's office.
4. Defendants CVS and GAB Robins shall pay for any further treatment reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability related to her compensable left knee injury of March 27, 2006.
5. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel. Of the accrued amount, 25% shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
6. Any claim by plaintiff and/or defendants CVS and GAB Robins against defendants RHG and Ohio Casualty Group for compensation and/or contribution in these claims must, under the law, be and hereby is DENIED. *Page 17 
7. Defendants CVS and GAB Robins shall pay the costs, including an expert witness fee of $637.50 to Dr. Gold; $425.00 to Dr. Morway; and $1,530.00 to Dr. Barnum, if not already paid.
This 29th day of September, 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_______________ BUCK LATTIMORE COMMISSIONER